IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| VICTORIA FELTS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:22-cv-00531 |
| NATIONAL INDOOR RV CENTER, | ) ) JUDGE CAMPBELL |
| Defendant. | ) MAGISTRATE JUDGE NEWBERN ) |

## MEMORANDUM

Pending before the Court is Defendant National Indoor RV Center's ("NIRVC") Motion for Summary Judgment (Doc. No. 24). Plaintiff Victoria Felts ("Felts") filed a response in opposition (Doc. No. 28) and NIRVC filed a reply (Doc. No. 30). For the reasons discussed below, NIRVC's motion will be **GRANTED** in part and **DENIED** in part.

### I. FACTUAL AND PROCEDURAL BACKGROUND

David Hennessy, the general manager of the Nashville NIRVC dealership, hired Felts as a service advisor. (Doc. No. 29 ¶ 3). As a service advisor, Felts was responsible for working with RV technicians and the service director to review work orders and resolve customer issues or complaints regarding their RVs. (*Id.* ¶ 9). After Felts was hired, Hennessy informed her that NIRVC's management operated in accordance with Mormon beliefs. (Doc. No. 24-2 at PageID # 142).

In early May 2021, Felts discovered she was pregnant and informed Hennessy. (Doc. No. 28-6 at PageID # 387; Doc. No. 29 ¶ 33). During Felts' first ultrasound appointment, her doctor informed her that her uterus had two severe hemorrhages and Felts and her physician determined that a medically prescribed surgery to end her pregnancy was the safest decision. (Doc. No. 31

¶ 6). Felts submitted a leave request to Hennessy and informed him that she planned to have a pregnancy-related procedure. (*Id.* ¶ 7). Hennessy granted Felts' leave request, and Felts underwent a procedure to terminate her pregnancy on May 27, 2021. (*Id.* ¶ 8; Doc. No. 29 ¶ 40). Felts returned to work on Saturday, May 29, 2021. (Doc. No. 28-6 at PageID # 397). On June 3, 2021, Felts arrived at work feeling ill and continued to feel worse throughout the day. (Doc. No. 28-6 at PageID # 398). Felts asked Karla Thomas, NIRVC's finance manager, to call an ambulance. (*Id.* at PageID # 399). Angie Morell, NIRVC's Director of Sales, was onsite at the Nashville NIRVC location and assisted Thomas in calling 911. (*Id.*). Thomas informed dispatchers on the phone call that Felts had recently had an abortion. (*Id.* at PageID # 385). Upon hearing this statement, Morell walked out of the office and did not return. (Doc. No. 24-2 at PageID # 147).

After Felts was hospitalized, her mother communicated her condition to Thomas and Hennessy. (Doc. No. 28-6 at PageID # 404). Felts' physician informed her that she had a septic infection resulting from her abortion. (Doc. No. 28-6 at PageID # 401). Felts was discharged on June 6, 2021, and scheduled to return to work on June 9, 2021. (Doc. No. 28-6 at PageID # 406). However, on June 8, 2021, Felts went to the emergency room due to increased bleeding and was instructed to return to work on June 11, 2021. (*Id.* at PageID # 406-407). Throughout Felts' hospital stay and subsequent emergency room visit, she continued to update Thomas on her condition. (Doc. No. 28-6 at PageID # 407).

Felts returned to work on June 11, 2021, and provided Hennessy two doctors' notes from her hospital visits. (*Id.* at PageID # 406, 410). On that same day, Hennessy called Felts into Thomas's office and informed her that NIRVC had decided to terminate her employment due to poor job performance. (*Id.* at PageID # 410). During the meeting, Felts told Hennessy that she

2

believed the only reason she was being fired was because of her pregnancy and abortion. (*Id.* at PageID # 411).

Felts filed this action against NIRVC on July 14, 2022, bringing claims of sex discrimination, religious discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and violation of the Pregnant Worker's Fairness Act ("PWFA"). NIRVC moved for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment movant has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary

3

judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

**A. Title VII**

    1. <u>Pregnancy Discrimination</u>

        a. Prima Facie Case

"The Pregnancy Discrimination Act makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy. It also says that employers must treat 'women affected by pregnancy ... the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work.'" *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 210 (2015) (internal citation omitted).

Felts does not point to direct evidence in support of her pregnancy discrimination claim. Where a plaintiff relies on indirect, circumstantial evidence to support her claims of discrimination and retaliation, the court will "apply the three-part burden-shifting framework developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668(1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981)[.]" *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775-76 (6th Cir. 2016).

"In order to show a prima facie case of pregnancy discrimination under Title VII, a plaintiff must show that '(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision.'" *Asmo v. Keane, Inc.*, 471 F.3d 588, 592 (6th Cir. 2006).

Here, NIRVC challenges only the fourth element. (Doc. No. 25 at PageID # 281). NIRVC argues that Felts has failed to show that Hennessy knew that Felts had an abortion and relies on *Prebilich-Holland v. Gaylord Entm't Co.*, 297 F.3d 438 (6th Cir. 2002). In *Prebilich-Holland*, the Sixth Circuit Court of Appeals held that a *prima facie* case of pregnancy discrimination case had not been established where the plaintiff failed to show that the employer had actual knowledge of her pregnancy at the time the adverse employment action was taken. *Id.* The Court in *Prebilich-Holland* ruled that the employer demonstrated undisputed facts showing that its decision to terminate the plaintiff's employment was made before any of plaintiff's supervisors knew of her pregnancy. In contrast, Felts has pointed to ample evidence in the record demonstrating that Hennessy and Thomas were aware of her pregnancy by early May 2021, well before her termination on June 11. (Doc. No. 28-6 at PageID # 387-389). NIRVC's knowledge of Felts' pregnancy prior to its decision to terminate her renders *Prebilich-Holland* inapposite.

NIRVC next contends that Felts' pregnancy discrimination claim fails because the allegation that she was terminated "because of her premarital pregnancy" only asserts that NIRVC enforced moral rule. (Doc. No. 25 at PageID # 283). In support of its argument, NIRVC relies on the Sixth Circuit Court of Appeals case *Boyd v. Harding Academy*, 88 F.3d 410, 414 (6th Cir. 1996). In *Boyd*, the Sixth Circuit Court of Appeals held that the plaintiff failed to show that a school's policy against extramarital sex was applied in a discriminatory manner and that the employer demonstrated a legitimate, nondiscriminatory reason for plaintiff's termination by stating that plaintiff was terminated "not because she was pregnant, but for engaging in sex outside of marriage." *Id.* at 414; *see also Cline v. Catholic Diocese*, 206 F.3d 651, 658 (6th Cir. 1996) ("[C]ourts have made clear that if the school's purported 'discrimination is based on a policy of preventing nonmarital sexual activity which emanates from the religious and moral precepts of the

5

school, and if that policy is applied equally to its male and female employees, then the school has not discriminated based on pregnancy in violation of Title VII"); *Dias v. Archdiocese of Cincinnati*, No. 1:11-CV-00251, 2013 WL 360355, at *5 (S.D. Ohio Jan. 30, 2013) ("In the light of *Boyd* and *Cline* the Court cannot adopt Plaintiff's view that terminating an employee for being 'pregnant and unwed' automatically amounts to a violation of Title VII."). Here, NIRVC argues that Felts "has effectively alleged that NIRVC terminated her for engaging in nonmarital sexual activity" and "that she was terminated because of nonmarital sexual activity, not because she was pregnant." (Doc. No. 25 at PageID # 283). The Court disagrees. Felts points to evidence in the record that she expressed concern to Thomas that she would be terminated for missing work for pregnancy-related complications, she was terminated the day that she returned from pregnancy-related leave, and she informed Hennessy during her termination that she believed the only reason for her termination was because of her pregnancy and abortion. (Doc. No. 28-4; Doc. No. 28-3; Doc. No. 28-6 at PageID # 411). The Court is unpersuaded by NIRVC's argument that such evidence amounts to mere enforcement of a moral rule.

Further, the Sixth Circuit has recognized that temporal proximity "may satisfy the nexus requirement in the pregnancy discrimination context" and that a temporal proximity of two months between an employer learning of the employee's pregnancy and the employee's termination is sufficient to demonstrate a nexus between the two events. *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006). Here, Felts has demonstrated a close temporal proximity of less than two months between when Hennessy and Thomas learned of her pregnancy and pregnancy-related leave and her termination. Accordingly, the Court finds that Felts has demonstrated a nexus between her pregnancy and the adverse employment decision.

b. Legitimate, Nondiscriminatory Reason

Once the plaintiff has established a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for their decision. *Smith v. City of Toledo, Ohio*, 13 F.4th 508, 515 (6th Cir. 2021). The burden then shifts back to the plaintiff to show that the reason the employer gave "was not its true reason, but merely a pretext for discrimination." *Id.* (internal citation omitted).

NIRVC argues that Felts was terminated for excessive absenteeism and lack of professionalism. (Doc. No. 25 at PageID # 287). Hennessy estimates that Felts missed approximately 20 to 25 percent of her workdays, forgot to tell Hennessy that she left early on April 9, 2021, and had an unexplained absence from work on April 23, 2021. (Doc. No. 24-1 at PageID # 98; Doc. No. 24-2 at PageID # 171; Doc. No. 24-2 at PageID # 172-173). NIRVC contends that Hennessy had several conversations with Felts regarding her appearance, adhering to the company dress code, and attendance issues. (Doc. No. 24-1 at PageID # 97). NIRVC also argues that Hennessy verbally counseled Felts regarding a Facebook comment posted by Felt's account while wearing NIRVC's uniform in her profile picture and that Hennessy counseled Felts on keeping her office door open and being available to greet customers. (Doc. No. 24-1 at PageID # 96; Doc. No. 24-2 at PageID # 176). Felts disputes that she was counseled on attendance or dress code. (Doc. No. 24-2 at PageID # 137). Nonetheless, because NIRVC has articulated a legitimate, nondiscriminatory reason for terminating Felts, the burden shifts back to Felts to show that the proffered reason is merely a pretext for discrimination.

c. Pretext

An employee can show pretext "by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated

7

reason was insufficient to warrant the adverse employment action." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014) (internal citation omitted).

To show pretext, Felts argues that NIRVC's proffered reason did not actually motivate Felts' termination. Felts points to evidence that Hennessy informed her during the termination that NIRVC was terminating her because she was not a good fit for the company. (Doc. No. 28-2 at PageID # 444). Felts also points to evidence that Hennessy marked "job performance" instead of "excessive absences" or "excessive tardies" on her termination paperwork. (Doc. No. 28-3). Felts also disputes that Hennessy raised any performance issues with her during her employment and points to evidence that Hennessy regularly praised Felts for her work performance and her ability to outperform the other service advisor. (Doc. No. 28 at PageID # 330; Doc. No. 28-6 at PageID # 370).

"An employer's changing rationale for making an adverse employment decision can be evidence of pretext." *Megivern v. Glacier Hills Inc.*, 519 F. App'x 385, 397 (6th Cir. 2013) (internal citation omitted) ("When a plaintiff is able to show that the defendant's justification for firing him changed over time, this can demonstrate a genuine issue of material fact that the proffered reason for termination is not only false, but that the falsity is a pretext for discrimination."); *Cicero v. Borg–Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir.2002) ("Shifting justifications over time calls the credibility of those justifications into question.").

Based on the evidence in the record, the Court finds that a reasonable jury could determine that NIRVC's proffered reason was pretext for discrimination. Accordingly, the Court finds that NIRVC has failed to establish the absence of a genuine dispute of material facts as to Felts' pregnancy discrimination claim and summary judgment will be denied as to this claim.

8

2. Religious Discrimination

"[A] 'prima facie case of religious discrimination,'…requires proof that '(1) [Plaintiff] holds a sincere religious belief that conflicts with an employment requirement; (2) [Plaintiff] has informed the employer about the conflicts; and (3) [Plaintiff] was discharged or disciplined for failing to comply with the conflicting employment requirement." *Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015). Once a plaintiff establishes a prima facie case, the "employer has the burden to show that it could not 'reasonably accommodate' his religious beliefs without 'undue hardship.'" *Id.*

Felts argues that her belief in a woman's right to make choices about her body stems from her religion as a Christian. (Doc. No. 28 at PageID # 333). Felts contends that when she disclosed her decision to have an abortion to NIRVC, she implicated her religious belief and practice in her right to make choices about her body. Felts argues that this conflicted with the known stance of practicing Mormons, which NIRVC management allegedly held themselves out to be.

However, NIRVC points to evidence that Felts never mentioned her Christian faith to NIRVC during her employment or felt uncomfortable because of her Christian faith during her employment. (Doc. No. 24-2 at PageID # 145). Felts testified that she never had any discussions about her faith while at NIRVC and that her "faith never came up" during her termination. (*Id.* at PageID # 145-146). NIRVC argues that Felts' belief regarding abortion "sounds more in personal preference or political status," which are not actionable as a religious discrimination claim. (Doc. No. 25 at PageID # 286).

42 U.S.C. § 2000e (j) provides that "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or

9

practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e (j).

Here, it appears that Felts is alleging that her religious belief in her right to have an abortion does not align with Mormon beliefs, which Felts contends underly NIRVC's operations and policies. Felts relies on generalized statements made by Hennessy that NIRVC and their management operated in accordance with Mormon beliefs and made statements including "[y]ou can't have a party because they're Mormon…They don't like tattoos because they're Mormon…They're Mormon, that's how they operate their company." (Doc. No. 28-6 at PageID # 377). Further, Felts contends that NIRVC's Director of Sales, Angela Morell, overheard Thomas inform the dispatchers that Felts had an abortion and walked out of the room. (Doc. No. 28-6 at PageID # 384). However, Felts must show that she has a sincerely held religious belief that conflicts with a *requirement* of her employment. *O'Connor v. Lampo Grp., LLC*, No. 3:20-CV-00628, 2021 WL 4480482, at *6 (M.D. Tenn. Sept. 29, 2021) ("it is not enough (or even relevant) that she alleges a religious belief that conflicts with the religious beliefs underlying the employer's requirement."). The Court finds that Felts has not done so here. !

Moreover, in order to meet the second element – that Felts informed NIRVC about the conflict between her sincerely held religious belief and an employment requirement – Felts must show that she informed NIRVC of her religious beliefs. *O'Connor*, 2021 WL 4480482 at *7. Felts points to evidence that she submitted a leave request to Hennessy and informed him that she had to have a pregnancy-related procedure done. (Doc. No. 28-6 at PageID # 392-394). However, Felts' leave request "is not an expression of religious belief" and does not by itself "plausibly show that [Felts] informed [NIRVC] [of] her alleged religious beliefs." *O'Connor*, 2021 WL 4480482

10

at *7. Felts' request for leave did not express any religious belief and gave notice only of her planned pregnancy-related procedure.

The Court finds that Felts has failed to demonstrate that her decision to undergo an abortion conflicted with a requirement of employment or that NIRVC was aware of her religion. Accordingly, summary judgment will be granted as to the religious discrimination claim.

3. Retaliation

To establish retaliation under Title VII, a plaintiff must show that: (1) she engaged in protected activity; (2) the defendant was aware of the protected activity; (3) the defendant took an action that was materially adverse to the plaintiff; and (4) there is a causal connection between the protected activity and the defendant's adverse action. *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343-44 (6th Cir. 2021).

NIRVC challenges only the first element and argues that "reporting a pregnancy is not a protected activity under Title VII." (Doc. No. 25 at PageID # 287). However, Felts points to evidence that she reported concern to Thomas that she could not miss work due to pregnancy-related complications because she was worried about upsetting Hennessy and she needed her job. (Doc. No. 28-4). Felts also points to evidence that during her termination, she vocalized that she believed the only reason for her termination was due to her pregnancy and abortion. (Doc. No. 24-2 at PageID # 161). Thus, the Court finds that NIRVC has failed to establish the absence of a genuine dispute of material facts as to Felts' retaliation claim, and NIRVC's motion for summary judgment will be denied as to this claim.

**B. Pregnant Worker's Fairness Act**

The Tennessee Pregnant Worker's Fairness Act, Tenn. Code Ann. § 50-10-101, *et seq.* provides the following, in relevant part:

(b) It is an unlawful employment practice for an employer to:

(3) Take adverse action against an employee in the terms, conditions, or privileges of employment for requesting or using a reasonable accommodation to the known limitations for medical needs arising from the employee's pregnancy, childbirth, or related medical conditions, including, but not limited to, counting an absence related to pregnancy under no fault attendance policies.

Tenn. Code Ann. § 50-10-103. Additionally, the PWFA includes the following definition of "Reasonable Accommodation":

(3) "Reasonable accommodation" may include:

(A) Making existing facilities used by employees readily accessible and usable;
(B) Providing more frequent, longer, or flexible breaks;
(C) Providing a private place, other than a bathroom stall, for the purpose of expressing milk;
(D) Modifying food or drink policy;
(E) Providing modified seating or allowing the employee to sit more frequently if the job requires standing;
(F) Providing assistance with manual labor and limits on lifting;
(G) Authorizing a temporary transfer to a vacant position;
(H) Providing job restructuring or light duty, if available;
(I) Acquiring or modifying of equipment, devices, or an employee's work station;
(J) Modifying work schedules; and
(K) Allowing flexible scheduling for prenatal visits

Tenn. Code Ann. § 50-10-102(3). NIRVC contends that Felts has not alleged an unlawful employment practice under the PWFA because medical leave is not listed as a reasonable accommodation.

Under well-established rules of statutory interpretation, the Court begins with the language of the statute itself. *Consumer Prod. Safety Comm'n*, 447 U.S. 102, 108 (1980). Departure from the plain language of a statute is disfavored and "appropriate only in rare cases [in which] the literal application of the statute will produce a result demonstrably at odds with the intentions of its drafter … or when the statutory language is ambiguous." *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 246 (6th Cir. 2004) (quoting *Kelley v. E.I. Dupont de Nemours & Co.*, 17 F.3d 836, 842 (6th Cir. 1994)).

12

Case 3:22-cv-00531   Document 39   Filed 07/11/24   Page 12 of 13 PageID #: 534

Here, the statute provides that "Reasonable Accommodation *may include*" the accommodations provided, demonstrating that the listed accommodations, while instructive, are not exhaustive or exclusive. Tenn. Code Ann. § 50-10-102(3) (emphasis added). There is ample evidence in the record demonstrating that Felts requested leave due to pregnancy-related complications. (Doc. No. 28-6 at PageID # 403-408). Felts also points to evidence that NIRVC terminated her the day she returned from leave and offered changing rationale for her termination, including attendance issues, poor job performance, and that she was "not a good fit for the company." (Doc. No. 28-6 at PageID # 410; Doc. No. 28-3; Doc. No. 24-1 at PageID # 118). Accordingly, the Court finds that NIRVC has failed to establish the absence of a genuine dispute of material facts as to Felts' PWFA claim and summary judgment will be denied as to this claim.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE