IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| VICTORIA FELTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:22-cv-00531 |
| ) | |
| NATIONAL INDOOR RV CENTER, ) | JUDGE CAMPBELL |
| ) | MAGISTRATE JUDGE NEWBERN |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Plaintiff's Motion for Reconsideration of the Court's Order on Defendant's Motion for Summary Judgment. (Doc. No. 43). Defendant filed a response in opposition. (Doc. No. 45). For the reasons stated below, Plaintiff's motion (Doc. No. 43) is **GRANTED**. The parties also filed a joint motion to continue the pretrial conference currently set for February 10, 2025, at 10:30 a.m. (Doc. No. 47), which is **GRANTED**.

### I. FACTUAL BACKGROUND

This is an employment discrimination case. Plaintiff worked as a service advisor at Defendant's Nashville dealership. (Doc. No. 24-1 at PageID # 92). After Plaintiff was hired, David Hennessy, the general manager of Defendant's Nashville dealership, informed her that Defendant's management operated in accordance with Mormon beliefs. (Doc. No. 24-2 at PageID # 141-142).

In early May 2021, Plaintiff discovered she was pregnant and informed Hennessy. (Doc. No. 28-6 at PageID # 387; Doc. No. 29 ¶ 33). During Plaintiff's first ultrasound appointment, her doctor informed her that her uterus had two severe hemorrhages and Plaintiff and her physician determined that a medically prescribed surgery to end her pregnancy was the safest decision. (Doc.

1

No. 31 ¶ 6). Plaintiff submitted a leave request to Hennessy and informed him that she planned to have a pregnancy-related procedure. (*Id.* ¶ 7). Hennessy granted Plaintiff's leave request, and she underwent a procedure to terminate her pregnancy on May 27, 2021. (*Id.* ¶ 8; Doc. No. 29 ¶ 40). On June 3, 2021, Plaintiff arrived at work feeling ill and continued to feel worse throughout the day. (Doc. No. 28-6 at PageID # 398). Plaintiff asked Karla Thomas, NIRVC's finance manager, to call an ambulance. (*Id.* at PageID # 399). Angie Morell, NIRVC's Director of Sales, was onsite at the Nashville NIRVC location and assisted Thomas in calling 911. (*Id.*). Thomas informed dispatchers on the phone call that Plaintiff had recently had an abortion. (*Id.* at PageID # 385). Upon hearing this statement, Morell walked out of the office and did not return. (Doc. No. 24-2 at PageID # 147).

After Plaintiff was hospitalized, her mother communicated her condition to Thomas and Hennessy. (Doc. No. 28-6 at PageID # 404). Plaintiff's physician informed her that she had a septic infection resulting from her abortion. (Doc. No. 28-6 at PageID # 401). Plaintiff was discharged on June 6, 2021, and scheduled to return to work on June 9, 2021. (Doc. No. 28-6 at PageID # 406). However, on June 8, 2021, Plaintiff went to the emergency room due to increased bleeding and was instructed to return to work on June 11, 2021. (*Id.* at PageID # 406-407). Throughout Plaintiff's hospital stay and subsequent emergency room visit, she continued to update Thomas on her condition. (Doc. No. 28-6 at PageID # 407). Plaintiff returned to work on June 11, 2021, and provided Hennessy two doctors' notes from her hospital visits. (Id. at PageID # 406, 410). On that same day, Hennessy called Plaintiff into Thomas's office and informed her that NIRVC had decided to terminate her employment due to poor job performance. (Id. at PageID # 410). During the meeting, Plaintiff told Hennessy that she believed the only reason she was being fired was because of her pregnancy and abortion. (*Id.* at PageID # 411).

Plaintiff brought suit against Defendant for sex discrimination, religious discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and violation of the Pregnant Worker's Fairness Act ("PWFA"). Defendant moved for summary judgment. (Doc. No. 24). On July 11, 2024, the Court entered an Order granting summary judgment only on Plaintiff's religious discrimination claim. (Doc. No. 40).

Plaintiff moved for reconsideration of the Court's order granting summary judgment on Plaintiff's religious discrimination claim on the grounds that an intervening change in controlling law occurred after the Court's July 11, 2024 Order. Neither party challenges the Court's Order denying summary judgment on Plaintiff's claims for sex discrimination, retaliation, and violation of the PWFA. Accordingly, the Court only addresses its previous ruling on Plaintiff's religious discrimination claim.

## II. STANDARD OF REVIEW

While the Federal Rules of Civil Procedure fail to explicitly address motions to reconsider interlocutory orders, "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). Thus, district courts may "afford such relief from interlocutory orders as justice requires." *Rodriguez*, 89 F. App'x at 959 (quoting *Citibank N.A. v. FDIC*, 857 F.Supp. 976, 981 (D.D.C.1994)) (internal brackets omitted). Courts traditionally will find justification for reconsidering interlocutory orders when there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct clear error or prevent manifest injustice. *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (citing *Rodriguez*, 89 F. App'x at 959). This standard "vests

3

significant discretion in district courts." *Rodriguez*, 89 F. App'x at 959 n.7. District courts reviewing motions to reconsider interlocutory rulings "at a minimum" require that there be some clear error in the court's prior decision or that the movant put forth an intervening controlling decision or newly discovered evidence not previously available. *Al-Sadoon v. FISI\*Madison Fin. Corp.*, 188 F. Supp. 2d 899, 902 (M.D. Tenn. 2002).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment movant has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the nonmoving party's claim or by demonstrating an absence of evidence of the non-moving party's claim. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

Plaintiff argues that an intervening change in controlling law occurred after the Court's July 11, 2024 Order based on the Sixth Circuit Court of Appeals' decision in *Amos v. Lampo Group, LLC,* No. 24-5011, 2024 WL 3675601 (6th Cir. Aug. 6, 2024). The plaintiff in *Amos* alleged that he was terminated from his employment "based on his failure to submit to [the employer's] religious practices and his expression of his own religious beliefs with regard to COVID measures" and brought various claims against the employer, including religious discrimination and retaliation under Title VII. *Id.* at *1. The Sixth Circuit recognized that "Title VII 'preclude[s] employers from discriminating against an employee because ... the employee fails to comply with the *employer's* religion," which it referred to as a claim for "religious nonconformity." *Id.* at *2 (internal citation omitted).

> Notably, the Sixth Circuit held that:
>
> At its core, the claim is that an employee's "lack of adherence to the religious beliefs promoted by the [employer] was the genesis of the discrimination." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007). In other words, the adverse employment actions "were taken because of a discriminatory motive based upon the employee's failure to hold or follow her employer's religious beliefs." *Owens v. City of New York Dep't of Educ.*, No. 21-2875, 2022 WL 17844279, at *2 (2d Cir. Dec. 22, 2022); see also *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 292 (3d Cir. 2009) ("Title VII seeks to protect employees not only from discrimination against them on the basis of their religious beliefs, but also from forced religious conformity."). Accordingly, the focus of the claim is on "the religious beliefs of the employer, and the fact that [the employee] does not share them"—not on the specific religious beliefs of the employee himself. *Shapolia v. Los Alamos Nat. Lab'y*, 992 F.2d 1033, 1038 (10th Cir. 1993).

*Amos*, 2024 WL 3675601, at *2. The Sixth Circuit rejected the district court's finding that "[t]he conflict causing the noncompliance must stem from the plaintiff's *own* religious beliefs; a plaintiff's rejection of the employer's religious-based requirement could be based on something other than religious beliefs of the plaintiff." *Id.* at *3 (emphasis included in original). The Sixth

5

Circuit ultimately held that the plaintiff pled facts sufficient to state a religious nonconformity claim by pleading that he was terminated because he did not share the employer's religion.

Here, Defendant argues that *Amos* does not represent an intervening change in controlling law because "religious nonconformity claims have always been actionable under Title VII" and *Amos* favorably cites to Sixth Circuit opinions published in 2009 and 2000 regarding the elements of a religious nonconformity claim. (Doc. No. 45 at PageID # 45).

Plaintiff contends that *Amos* clarified that "religious discrimination under Title VII may occur when an employer imposes policies based on its religious beliefs which causes an employee to suffer discrimination" and that Plaintiff is not required to demonstrate that having an abortion was a religious belief in order to state a Title VII religious discrimination claim. The Court agrees.

*Amos* makes clear that the Sixth Circuit "ha[s] yet to explore the contours of this type of discrimination claim" and considered alternative terms for this claim before settling on the term "religious nonconformity." *Amos*, 2024 WL 3675601, at *2. Further, while *Amos* references two earlier Sixth Circuit opinions supporting that Title VII "preclude[s] employers from discriminating against an employee because ... the employee fails to comply with the *employer's* religion," the Sixth Circuit's analysis in *Amos* does not end there. *Id.* (internal citations omitted). Instead, *Amos* recognized that "the focus of the [religious nonconformity] claim is on 'the religious beliefs of the employer, and the fact that [the employee] does not share them' – not on the specific religious beliefs of the employee himself." *Id.* The Court is unaware of – and Defendant fails to direct the Court to – Sixth Circuit precedent pre-*Amos* that makes this distinction.

Moreover, the two cases cited in *Amos* and focused on by Defendant are distinguishable from the present case. In *Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722 (6th Cir. 2009), the Sixth Circuit considered whether the Kentucky Civil Rights Act's prohibition

against employment discrimination on account of religion prohibited employers from "discriminating against an employee because of the employee's religion as well as because the employee fails to comply with the *employer's* religion." *Id.* at 727 (internal citations omitted) (emphasis in original). While the Sixth Circuit recognized that Title VII precedent applied to its analysis of the Kentucky Civil Rights Act, *Pedreira*, as relevant to this case, was limited to holding that courts had interpreted the Kentucky Civil Rights Act to prohibit discrimination of an employee by an employer because the employee failed to comply with the employer's religion.

In *Hall v. Baptist Memorial Health Care Corp.*, 215 F.3d 618 (6th Cir. 2000), the Sixth Circuit held that in the context of Title VII's exemption for religious educational organizations "[t]he decision to employ individuals 'of a particular religion' under § 2000e–1(a) and § 2000e–2(e)(2) has been interpreted to include the decision to terminate an employee whose conduct or religious beliefs are inconsistent with those of its employer." *Id.* at 624. Unlike *Pedreira* and *Hall*, *Amos* directly confronts the elements of a religious nonconformity claim under Title VII and makes clear that a religious nonconformity claim exists where an employer terminates an employee for failing to comply with the employer's religion.

Defendant also argues that Plaintiff failed to raise a religious nonconformity claim at any time before filing the motion to reconsider and that there is no evidence that Plaintiff failed to conform with a religious belief held by Defendant. In *Amos*, the Sixth Circuit recognized that religious nonconformity is a "type[] of religious discrimination claim[]." *Amos*, 2024 WL 3675601, at *2. Just as the plaintiff in *Amos* did not plead – and was not required to plead – a stand-alone claim for religious nonconformity in addition to a claim for religious discrimination, Defendant fails to justify imposing a heightened pleading requirement on Plaintiff here. Plaintiff's Complaint alleges that "[a]t the onset of her employment, [Plaintiff] was informed by coworkers

7

and others that Defendant's management closely held Mormon beliefs and that a significant number of Defendant's leadership followed the Mormon faith," that she "discovered that many employees at Defendant's corporate office associated with the Mormon faith," and that she "frequently worked closely with employees that openly shared their Mormon beliefs." (Doc. No. 1 ¶¶ 14-16). Plaintiff also alleges that she was "discriminated and retaliated against because of her premarital pregnancy and for having a medically prescribed abortion." (Doc. No. 1 ¶ 36). Accordingly, the Court finds that Plaintiff alleged sufficient facts in the Complaint to sustain a claim for religious discrimination.

Further, *Amos* was decided in the context of a motion to dismiss. Defendant's evidentiary burden on summary judgment requires it to establish the absence of evidence as to whether Plaintiff was terminated for failing to comply with Defendant's religious belief. Defendant has not done so here. Plaintiff points to evidence that Defendant informed her that it operated in accordance with Mormon beliefs. (Doc. No. 24-2 at PageID # 141-142). Plaintiff also points to evidence that she was absent from work to undergo a procedure to terminate her pregnancy, and that Hennessy was aware that Plaintiff planned to have a pregnancy-related procedure. (Doc. No. 28-6 at PageID # 392-394). Plaintiff points to evidence that Defendant learned about Plaintiff's abortion after Plaintiff returned to work, and that she was terminated shortly thereafter. (Doc. No. 24-2 at PageID # 146; Doc. No. 28-6 at PageID # 410). Moreover, Plaintiff points to evidence that she informed Hennessy during her termination that she believed the only reason she was being fired was because of her pregnancy and abortion. (Doc. No. 28-6 at PageID # 411).

Accordingly, the Court finds that Defendant has failed to establish an absence of evidence as to whether Plaintiff was terminated for failing to comply with Defendant's religion and summary judgment is inappropriate on Plaintiff's religious discrimination claim.

## IV. CONCLUSION

For the reasons stated, Plaintiff's motion to reconsider (Doc. No. 43) is **GRANTED**. The Court's Order entered July 11, 2024 (Doc. No. 40) is **VACATED IN PART** as to dismissal of Plaintiff's religious discrimination claim, and Defendant's motion for summary judgment (Doc. No. 24) is **DENIED**. The parties' joint motion to continue the pretrial conference (Doc. No. 47) is also **GRANTED**.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE