**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **VICTORIA FELTS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No: 3:22-cv-531** |
| | ) | **Judge William L. Campbell Jr.** |
| **NIRVC-TN, LLC** | ) | **Magistrate Judge Evans** |
| | ) | |
| **Defendant.** | ) | |

---

**MOTION TO AMEND PLAINTIFF'S BRIEF ON TENNESSEE PREGNANT WORKERS FAIRNESS ACT DAMAGES**

---

Plaintiff, Victoria Felts, by and through counsel, respectfully moves the Court for leave to file a corrected version of Plaintiff's trial brief (Doc. 129) previously filed in this action on October 2, 2026. In support, Plaintiff states as follows:

1. On October 2, 2026, Plaintiff filed Trial Brief (Doc. 129).
2. After filing, counsel discovered two typographical errors in citations within the brief. The errors are as follows:
    a. In Section III, page 8, paragraph 3, there is an "*Id*." cite after the second sentence referencing the previous citation to *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 364, 366 (6th Cir. 2018) found in the previous paragraph. The quoted language in the second sentence of paragraph 3 is not from *Lindenberg*, but from *McClay v. Airport Mgmt. Servs., LLC,* 596 S.W.3d 686, 693 n.6 (Tenn. 2020).
3. In Section III, page 9, paragraph 1, the citation to *Rositano* was incorrectly stated as *Rositano v. Freightwise, LLC,* No. 3:19-cv-00888, 2021 WL 1174589, at *8 (M.D. Tenn.

Mar. 29, 2021). Any and all cites to *Rositano* should be corrected to *Rositano v. Frieightwise, LLC*, No. 3:20-cv-00420, 2021 WL 1174589, at *8 (M.D. Tenn. Mar. 26, 2021).

4. These corrections are clerical only. They do not add, remove, or change any argument, authority, factual assertion, or requested relief.
5. Allowing the correction will help the Court and parties by making sure the cited authorities can be located and read in context. No party will be prejudiced by these corrections.
6. A copy of the proposed Corrected Trial Brief is attached as Exhibit A.
7. The mistakes were not made by artificial intelligence, rather by simple human typographical errors
8. Counsel for Plaintiff conferred with counsel for Defendant by email on October 14, 2026. Defendant does not oppose the relief requested.

WHEREFORE, Plaintiff respectfully asks the Court to grant leave to file the Corrected Trial Brief attached as Exhibit A and to deem it substituted for Doc. 129 as of the original filing date.

Respectfully Submitted,
**THE EMPLOYMENT AND COMMERCE LAW GROUP,**

/s/ ***Jonathan A. Street***
**JONATHAN STREET, BPR NO. 027172**
**G. BRANDON HALL, BPR NO. 034027**
1625 Broadway, Suite 601
Nashville, TN 37203
(615) 850-0632
street@eclaw.com
bhall@eclaw.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing was served via the Court's CM/ECF filing system this 16th day of October 2026 to the following:

Chris W. McCarty, Esq. (BPR #025551)
Ryan T. Shannon, Esq. (BPR #039441)
LEWIS THOMASON, P.C.
900 S Gay Street, Suite 300
P.O. Box 2425
Knoxville, TN 37901
(865) 546-4646
CMcCarty@LewisThomason.com
RShannon@LewisThomason.com

*Attorneys for Defendant*

*/s/ Jonathan A. Street*
Jonathan A. Street

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **VICTORIA FELTS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No: 3:22-cv-531** |
| | ) | **Judge William L. Campbell Jr.** |
| **NIRVC-TN, LLC** | ) | **Magistrate Judge Evans** |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S AMENDED BRIEF ON TENNESSEE PREGNANT WORKERS FAIRNESS ACT ISSUES

Pursuant to the Court's Order of September 1, 2026 (Doc. 124), Plaintiff Victoria Felts submits this brief on the three questions the Court identified: 1) whether the amount of damages awarded under the Tennessee Pregnant Workers Fairness Act is an issue for the jury or the Court; 2) whether punitive damages are available under the TPWFA; and 3) whether the determination that a medical need arises from pregnancy or a related medical condition under Tenn. Code Ann. § 50-10-103(b)(1) is a question for the jury. The court also invited the parties to address any other issue they felt were pertinent, and Plaintiff has done that in the final section of this brief. Each question turns on the same statutory text. Tenn. Code Ann. § 50-10-104(b) provides:

> "Any person adversely affected by an act in violation of this chapter may bring a civil action in the chancery court or circuit court in the jurisdiction where the alleged violation occurred. In the action, a court may issue back pay, compensatory damages, prejudgment interest, reasonable attorney's fees, and any legal or equitable relief that will effectuate the purpose of this chapter."

No Tennessee appellate court has construed that sentence. The questions before the Court appear to be ones of first impression.

## I. THE AMOUNT OF DAMAGES UNDER THE TPWFA IS AN ISSUE TO BE DETERMINED BY THE JURY

The statute vests all remedies in “a court,” using the discretionary language “may issue” for the remedies listed in the provision: back pay, compensatory damages, prejudgment interest, reasonable attorney’s fees, and any legal or equitable relief. Defendant reads the phrase "a court may issue" in Tenn. Code Ann. § 50-10-104(b) to mean that the judge, rather than the jury, fixes the amount of any TPWFA award. That reading fails for three independent reasons.

### A. Federal law governs the right to a jury trial in this Court

Under *Erie Railroad Co. V. Tompkins*, 304 U.S. 64 (1938), federal courts apply state substantive law but federal procedural law, and the Seventh Amendment right to jury trial is a federal procedural rule that applies even when a federal court is adjudicating state law claims. State law supplies the substance of the claim here, but state law does not decide who tries it. This Court exercises supplemental jurisdiction over the TPWFA claim. When a TPWFA claim is litigated in this Court, the Seventh Amendment, not Tennessee state law, governs the right to a jury trial. The Supreme Court has held that "the right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions." *Simler v. Conner*, 372 U.S. 221, 222 (1963). The Court went further and addressed the precise move Defendant makes here: "the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law." *Id.*

The relief Plaintiff seeks under the TPWFA is back pay, compensatory damages, and punitive damages. That is money damages for a completed statutory wrong. It is legal relief, and the Seventh Amendment attaches. A state legislature cannot withdraw a federal jury right by describing the decisionmaker as "a court," and *Simler* holds that a state characterization does not control the question in the first place.

### B. The Tennessee Constitution mandates the right to a jury trial

Moreover, in *McClay v. Airport Mgmt. Servs., LLC*, the Court states, “The right to a jury trial in Tennessee is expressly guaranteed by Article 1, Section 6, of the Tennessee Constitution, which mandates that ‘the right of trial by jury shall remain inviolate.’” *McClay,* 596 S.W.3d 686, 690 (Tenn. 2020). The Tennessee Supreme Court could not have been more clear; the right to trial by jury under the Tennessee Constitution is only satisfied when an unbiased and impartial jury makes a factual determination regarding the amount of noneconomic damages, if any, sustained by the plaintiff. *Id.*

### C. "A court may issue" identifies the forum, not the factfinder

Even on its own terms, the statute does not say what Defendant needs it to say. The first sentence of § 50-10-104(b) tells the claimant where to file: "a civil action in the chancery court or circuit court." The second sentence then describes what relief "a court may issue" in that action. Read together, the two sentences allocate subject matter jurisdiction between Tennessee's trial courts. Neither sentence divides labor between judge and jury. This drafting of the TPWFA parallels the drafting of the Tennessee Human Rights Act (THRA), which is Tenn. Code Ann. § 4-21-301, et. seq.. When the plaintiff has brought an action in court, the THRA provides, in pertinent part, that

> “the court may issue any permanent or temporary injunction, temporary restraining order, or ***any other order and may award to the plaintiff actual damages sustained by such plaintiff***, together with the costs of the lawsuit, including a reasonable fee for the plaintiff’s attorney of record.”

Tenn. Code Ann. § 4-21-311 (emphasis added); see also *Baker v. Windsor Republic Doors*, 635 F. Supp.2d 765, 772 (W.D. Tenn. 2009).

This language is synonymous with the discretionary language (“a court may issue”) found in TPWFA. In *Baker*, under the THRA, the discrimination claim brought by Plaintiff was submitted

to a jury, which found the Defendant to be liable and awarded Plaintiff $84,000 in back pay and $29,500 in compensatory damages. *Baker*, 635 F. Supp.2d at 765. With the discretionary language in THRA, a Tennessee state law mirroring the language of TPWFA, another Tennessee state law, and the issue of damages being sent to the jury to resolve in a previous case, it stands to reason the issue of damages would be sent to the jury in the present case.

Congress uses the same convention. Title VII provides that "the court may enjoin the respondent . . . and order such affirmative action as may be appropriate." 42 U.S.C. § 2000e-5(g)(1). No one reads that sentence to strip the jury of the damages question, because 42 U.S.C. § 1981a(c)(1) supplies a jury right for compensatory and punitive damages. The phrase "the court" in a remedies provision is ordinary drafting for the tribunal that enters judgment. It carries no message about the factfinder. Defendant's reading would also produce an unworkable trial. The same facts support Plaintiff's Title VII claims, which are indisputably for the jury, and her TPWFA claim. Under Defendant's construction this Court would empanel a jury to award damages on one claim and simultaneously fix damages itself on the other, on identical evidence. Nothing in the statute requires that result.

## II. PUNITIVE DAMAGES ARE AVAILABLE UNDER THE TPWFA

### A. The statute authorizes "any legal or equitable relief," and punitive damages are legal relief

Section 50-10-104(b) authorizes "back pay, compensatory damages, prejudgment interest, reasonable attorney's fees, and any legal or equitable relief that will effectuate the purpose of this chapter." Punitive damages are a form of legal relief. They are awarded by juries, at law, and have been since well before the Tennessee Constitution was adopted.

Silence on punitive damages is not a prohibition. The West Virginia Supreme Court of Appeals so held on materially identical language. Construing the West Virginia Human Rights

Act, which authorized "any other legal or equitable relief as the court deems appropriate," the court held that punitive damages fall within that phrase because the term "any legal relief" necessarily includes them. *Haynes v. Rhone-Poulenc, Inc.*, 206 W. Va. 18, 521 S.E.2d 331 (1999). Federal courts applying West Virginia law have since recognized the general principle that a statute's silence on punitive damages "is not dispositive on the issue of the availability of that remedy." *Michael v. Harrison Cnty. Coal Co.*, No. 1:18-cv-58, 2019 WL 2567661, at *2 (N.D. W. Va. June 21, 2019) (quoting *Virden v. Altria Grp., Inc.*, 304 F. Supp. 2d 832, 850 (N.D. W. Va. 2004)).

### B. Carver does not control, because the feature that drove Carver is absent here

Defendant will likely rely on *Carver v. Citizen Utilities Co.*, 954 S.W.2d 34 (Tenn. 1997), where the Tennessee Supreme Court held that punitive damages are available under the Tennessee Human Rights Act "only for claims involving discriminatory housing practices and malicious harassment." *Id.* at 34. *Carver* does not reach this statute.

*Carver* rested entirely on a structural feature internal to the THRA. The General Assembly had expressly authorized punitive damages in two places, Tenn. Code Ann. § 4-21-311(c) for housing discrimination and § 4-21-701 for malicious harassment, and nowhere else. From that contrast the court applied the canon that "the mention of one subject in a statute means the exclusion of other subjects that are not mentioned," and concluded that "[o]missions are significant when statutes are express in certain categories but not others." *Id.* at 35. The court supplied a second, textual reason unique to the THRA: § 4-21-311(c) made punitive damages available "[i]n addition to . . . all remedies described in § 4-21-306," which proved that the § 4-21-306(8) catchall did not itself contain them. *Id.* at 35-36.

Chapter 50-10 has no comparable structure. The General Assembly did not authorize punitive damages for one subset of TPWFA claims and withhold them from another. It said nothing

about punitive damages anywhere in the chapter. There is no internal contrast from which to infer an exclusion, and there is no "in addition to" clause proving that the catchall is empty. The canon *Carver* applied has nothing to operate on.

The remedial language also differs. The THRA provision at issue in *Carver* permitted the court to "award to the plaintiff actual damages sustained," Tenn. Code Ann. § 4-21-311(b), and the catchall reached "[s]uch other remedies as shall be necessary and proper to eliminate all of the discrimination," § 4-21-306(a)(8). Both phrases are framed in terms of eliminating discrimination and restoring the plaintiff. Section 50-10-104(b) is framed in terms of relief, and it uses the words "any legal . . . relief." Those are the words *Haynes* held to include punitive damages.

### C. *Hoy* is distinguishable, and Plaintiff does not rely on *Keck*

Candor requires addressing the Pennsylvania line directly. In *Keck v. Commercial Union Insurance Co.*, 758 F. Supp. 1034 (M.D. Pa. 1991), a federal court predicted that Pennsylvania would allow punitive damages under the Pennsylvania Human Relations Act. The Pennsylvania Supreme Court later rejected that prediction. *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745 (1998). Plaintiff does not rely on *Keck*.

*Hoy* does not govern this statute either, because it turned on a limiting phrase the TPWFA does not contain. The PHRA directed the court to "order affirmative action which may include, but is not limited to, reinstatement or hiring of employes, granting of back pay, or any other legal or equitable relief as the court deems appropriate." 43 P.S. § 962(c)(3). The Pennsylvania Supreme Court held that the phrase "any other legal or equitable relief" is "clearly a subset of the 'affirmative action' which a court may order," applied *ejusdem generis*, and concluded that affirmative action "contemplates make whole measures and remedial action" into which punitive damages do not fit. *Hoy*, 554 Pa. at 141-42.

Section 50-10-104(b) contains no "affirmative action" limiter. The enumerated items preceding the catchall are not affirmative action measures such as reinstatement and hiring. They are categories of money damages: back pay, compensatory damages, prejudgment interest, and attorney's fees. If *ejusdem generis* applies at all, it points toward monetary relief, not away from it. *Haynes* reached that result on a statute far closer to this one than the PHRA is.

Defendant will likely argue that the TPWFA's own qualifier, "that will effectuate the purpose of this chapter," does the work "affirmative action" did in *Hoy*. It does not. The phrase describes the object of the relief, not its character, and the purpose of chapter 50-10 is to stop employers from refusing pregnancy accommodations. Deterrence serves that purpose directly. The West Virginia court made the same point, recognizing that the statute there contemplated "not merely compensating victims of discrimination . . . but preventing violations of these rights." *Haynes*, 521 S.E.2d at 345.

### D. The federal Pregnant Workers Fairness Act confirms that punitive damages fit this statutory scheme

The federal Pregnant Workers Fairness Act expressly makes punitive damages available. It incorporates the powers, remedies, and procedures of Title VII, 42 U.S.C. § 2000gg-2(a)(1), and separately incorporates 42 U.S.C. § 1981a "including the limitations contained in subsection (b)(3) of such section 1981a," § 2000gg-2(a)(3). Section 1981a(b)(1) authorizes punitive damages on a showing of malice or reckless indifference. Congress also supplied an affirmative defense: damages may not be awarded where the employer demonstrates good faith efforts, in consultation with the employee, to identify and make a reasonable accommodation. 42 U.S.C. § 2000gg-2(g).

The federal act does not apply to this case. It took effect on June 27, 2023, and the conduct at issue occurred in 2021. Plaintiff cites it for a narrower point. Congress concluded that punitive damages are an appropriate remedy for exactly the wrong the TPWFA addresses, the refusal to

accommodate a pregnancy-related limitation. Nothing about a pregnancy accommodation claim makes punitive relief categorically inapt.

Plaintiff acknowledges the counterargument. Defendant may say that Congress authorized punitive damages in express terms while the General Assembly did not, and that the contrast shows Tennessee meant to withhold them. The answer is that the two statutes are built differently. Congress wrote a remedies provision that incorporates another statute by cross-reference, so express language was necessary. The General Assembly wrote an open-ended grant of "any legal or equitable relief." A legislature that uses a general phrase is not required to enumerate every remedy the phrase contains.

## III. THE STATUTORY CAP AT TENN. CODE ANN. § 29-39-104(a)(5) DOES NOT APPLY IN THIS COURT

If punitive damages are available, the cap at Tenn. Code Ann. § 29-39-104(a)(5), which limits such damages to the greater of two times compensatory damages or $500,000, is unenforceable here.

The Sixth Circuit has held that § 29-39-104 "is unenforceable to the extent that it purports to cap punitive damage awards," because the cap "violates the individual right to a trial by jury set forth in the Tennessee Constitution." *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 364, 366 (6th Cir. 2018). That holding binds this Court.

The Tennessee Supreme Court has not disturbed it. Additionally, the court upheld the separate statutory cap on noneconomic damages at Tenn. Code Ann. § 29-39-102. The court expressly reserved the punitive damages question, noting in footnote 6 that "the instant case involves the statutory cap on noneconomic damages in Tennessee Code Annotated section 29-39-102" while acknowledging the Sixth Circuit's contrary holding as to § 29-39-104. *McClay v. Airport Mgmt. Servs., LLC,* 596 S.W.3d 686, 693 n.6 (Tenn. 2020).

Judges of this District are bound by the Sixth Circuit's decision in *Lindenburg* and have continued to apply it even after the Tennessee Supreme Court decided *McClay*. In *Rositano v. Frieightwise, LLC*, No. 3:20-cv-00420, 2021 WL 1174589, at *8 (M.D. Tenn. Mar. 26, 2021), the court held that a punitive award "cannot be limited by the unconstitutional damages cap in Tenn. Code Ann. § 29-39-104(a)(5)." The court stated "the Sixth Circuit already held "the statutory cap on punitive damages set forth in Tenn. Code Ann. § 29-39-104 violates the Tennessee Constitution and is unenforceable to the extent that it purports to cap punitive damage awards. *Rositano*, No. 3:20-cv-00420, 2021 WL 1174589, at *8 (M.D. Tenn. Mar. 26, 2021) (quoting *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 366, 370 (6th Cir. 2018)). In *Spencer v. Caracal International, LLC*, No. 2:20-cv-00033, 2021 WL 3550727, at *7 (M.D. Tenn. Aug. 11, 2021), the court observed that "there is no limit on punitive damages anywhere else in the Tennessee Code."

Plaintiff notes for the Court's benefit that *McClay* described the reasoning of the *Lindenberg* majority as unpersuasive. *McClay* did not decide the constitutionality of § 29-39-104, and *Lindenberg* remains the published holding of the Sixth Circuit on that question. Unless and until it is overruled, it governs.

## IV. WHETHER A MEDICAL NEED ARISES FROM PREGNANCY IS A QUESTION FOR THE JUDGE

Tenn. Code Ann. § 50-10-103(b) turns on whether the employee had a "known limitation" arising from "pregnancy, childbirth, or a related medical condition." Whether a particular medical need arose from pregnancy is a dispute purely of statutory interpretation. The question is if abortion-related conditions fall within the statute's text as a category, regardless of underlying disputed facts. This a question of law for the Court, not a question for the jury, which is responsible for resolving questions of historical fact. This principle is well-established; statutory interpretation is always to be resolved by the Court. The fact that the condition here arose after the termination

for medical reason is a matter of medical record. The legal question here is whether that condition falls within the protection of the statute, which is one of statutory construction.

## V. EVIDENCE OF PLAINTIFF'S PREVIOUS ABORTION SHOULD BE EXCLUDED AS INADMISSIBLE DUE TO POTENTIAL FOR PREJUDICE

Evidence of a plaintiff's prior abortion that precedes the pregnancy at issue in a TPWFA case should be excluded as inadmissible. Under Fed. R. Evid. 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. Here, this inquiry is whether a prior abortion has any tendency to make the fact a medically necessary abortion was a pregnancy-related condition more or less probable. Plaintiff's previous abortion does not have any bearing on whether the medically necessary abortion and subsequent hospitalization in this matter was a pregnancy-related condition. Moreover, if the prior abortion was relevant, it should still be excluded due to the probative value being substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403.

In *Stewart v. Ashley*, a case to establish paternity, the issue of whether appellant had terminated a prior pregnancy was determined by the Tennessee Court of Appeals to be irrelevant. *Stewart v. Ashley*, 1993 WL 398497 (Tenn. Ct. App. Oct. 6, 1993).

The sole issue in *Stewart* was whether the appellee was the father of a child, and a previous abortion had no bearing on that issue. The Court went on to state

> "We know of no current issue which has become more politically and socially divisive than the issue of abortion. Many people have deeply held moral, social and religious beliefs about whether women should be allowed to have an abortion, and under what circumstances. Whether or not a woman may choose to have an abortion evokes strong personal feelings; testimony and argument which suggested that the appellant had terminated a prior pregnancy by abortion was highly inflammatory and prejudicial."

*Id.* at *2.

Allowing evidence of Plaintiff's previous abortion could unfairly prejudice the jury and should therefore be excluded as inadmissible.

## CONCLUSION

Plaintiff respectfully submits that the amount of any TPWFA award is for the jury, that punitive damages are available under Tenn. Code Ann. § 50-10-104(b), that the cap at Tenn. Code Ann. § 29-39-104(a)(5) is unenforceable in this Court under *Lindenberg*, that whether a medical need arises from pregnancy or a related medical condition is a question of statutory interpretation for the Judge, and that any evidence of Plaintiff's prior abortion be excluded as inadmissible.

Respectfully submitted,

**THE EMPLOYMENT & COMMERCE LAW GROUP**

*/s/ JONATHAN A. STREET*_______________________
JONATHAN A. STREET, BPR No. 027172
G. BRANDON HALL, BPR No. 034027
1625 Broadway, Suite 601
Nashville, Tennessee 37203
(615) 850-0632
street@eclaw.com
bhall@eclaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Court's CM/ECF system this 16th day of October 2026 to the following:

LEWIS THOMASON, P.C.
Chris W. McCarty, BPR #025551
Ryan T. Shannon, BPR #039441
900 S. Gay Street, Suite 300
P.O. Box 2425
Knoxville, Tennessee 37901
(865) 546-4646

*Attorneys for Defendant*

*/s/ Jonathan A. Street*